UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 20-CR-0307-001-CVE |
| ) | |
| ADAM DOUGLAS SHERWOOD, ) | |
| ) | |
| Defendant. ) | |

**OPINION AND ORDER**

Now before the Court is the Motion to Suppress Evidence Obtained from Search of Defendant Sherwood's Cellular Phone (Dkt. # 44) and the Motion to Suppress Evidence Obtained in Warrantless Arrest, Search and Seizure (Dkt. # 47). Defendant argues that he is a member of the Muscogee (Creek) Nation and officers of the Tulsa Police Department (TPD) lacked jurisdiction to stop and search a vehicle in which he was a passenger on May 23, 2020. Plaintiff responds that police officers had a good faith belief that they were acting within the scope of their jurisdiction, and the officers' conduct did not violate defendant's rights under the Fourth Amendment. The Court held an evidentiary hearing on October 26, 2021, and defendant's motions are ripe for adjudication.

I.

On May 22 and 23, 2020, TPD received multiple 911 calls concerning gunfire coming from a white pickup truck, and the last call received by TPD placed the vehicle near 6415 South Mingo Road at 12:27 a.m. on May 23, 2020. The final 911 call specifically identified the vehicle as a white Chevrolet Silverado. Plaintiff's Ex. 5, at 3. TPD Officer Andrew DeGeorge was on patrol near that address, and he saw a 2014 white Chevrolet Silverado pull into a parking lot at 6415 South Mingo

Road. DeGeorge noticed that the licence plate of the vehicle was not properly lit in violation of Okla. Stat. tit. 47, § 47-12-204.1. DeGeorge initiated a traffic stop of the pickup truck after the vehicle had already turned into the parking lot. He walked up to the driver's side window, but the driver did not immediately roll down the window. DeGeorge knocked on the window and the driver opened the window, and DeGeorge saw two men sitting in the front seat and a woman sitting in the back seat of the vehicle. DeGeorge asked the driver for his driver's license, but the driver responded that he did not have any identification.

DeGeorge asked all of the occupants of the vehicle if any of them were convicted felons and if they had previously been arrested for a firearms offense. The driver, Kenneth Rosenberg, admitted that he was a convicted felon and the woman in the back seat, Chasidy St. Clair,[1] stated that she had prior convictions relating to firearms. Upon questioning by DeGeorge, the occupants of the vehicle denied that there were any firearms or illegal drugs present in the vehicle, but DeGeorge believed that all three occupants of the vehicle seemed unusually nervous. The person in the front passenger seat, Adam Sherwood, was drinking from an open container of beer. DeGeorge saw an object that appeared to be a holster for a firearm in the center console, and he asked for consent to search the vehicle. Rosenberg denied DeGeorge's request for consent to search the vehicle, but DeGeorge advised the occupants that he had probable cause to search the vehicle due to the open container of beer. DeGeorge requested backup before initiating the search and he was alone at the scene until backup arrived. DeGeorge was checking on the status of his backup and he saw that Rosenberg was reaching between his seat and the center console. DeGeorge unholstered his firearm and ordered

---

[1]   This is how St. Clair's first name is spelled in the police reports. Plaintiff refers to St. Clair as "Chastity."

Rosenberg to put his hands on the steering wheel, and Rosenberg complied with DeGeorge's order. DeGeorge continued to talk to the occupants of the vehicle while he waited for backup to arrive.

Backup officers arrived at the scene and DeGeorge asked Rosenberg to step out of the vehicle. DeGeorge placed Rosenberg in handcuffs for officer safety, but DeGeorge advised Rosenberg that he was not under arrest. DeGeorge asked Rosenberg if he was in possession of any weapons, and Rosenberg stated that he had a pocketknife. DeGeorge also noticed that Rosenberg was wearing an empty firearm holster, and Rosenberg claimed that he was "trying it on." DeGeorge frisked Rosenberg and found a pocketknife in Rosenberg's front right pocket, and DeGeorge dropped the pocketknife on the ground. DeGeorge felt something else in the same pocket and removed a large amount of balled-up cash, which he placed back in Rosenberg's pocket. DeGeorge walked over to the front passenger side door and asked Sherwood to step out of the vehicle, and he placed Sherwood in handcuffs for officer safety. Sherwood stated that he had a pocketknife in his left front pocket, and DeGeorge frisked Sherwood for weapons. DeGeorge did not find a pocketknife in DeGeorge's front left pocket, but he did find a ball of cash and baggie containing a brown crystalline substance that was later identified as methamphetamine.

While DeGeorge was frisking the occupants of the vehicle, TPD Sergeant G.K. Smith searched truck and found a fully loaded Ruger LCR revolver in the center console. DeGeorge assisted with the search of the truck and found a green zippered bag on the floor near the front passenger seat. The bag contained a set of digital scales and multiple plastic baggies, and one of the baggies had residue inside. Police officers found a magazine and chamber loaded Lorcin semi-automatic pistol under the center console, and the serial number of the pistol had been scratched off. In addition, the officers found the leather holster that DeGeorge had observed from outside the

3

vehicle. Based on the discovery of the firearms, the officers advised Sherwood of his <u>Miranda</u>[2] rights and he declined to speak to the police. Police later obtained a search warrant for Sherwood's cellular phone.

Sherwood was charged with drug and weapon offenses in Tulsa County District Court. On July 9, 2020, the Supreme Court issued its decision in <u>McGirt v. Oklahoma</u>, 140 S. Ct. 2452 (2020), in which it found that the Muscogee (Creek) Reservation had never been disestablished by Congress, and the historical boundaries of the reservation are considered Indian country under federal law. A federal grand jury charged defendant with drug conspiracy (count one), possession of methamphetamine with intent to distribute (count two), unlawful use of a communications facility (counts three through thirteen), possession of a firearm in furtherance of a drug trafficking crime (count sixteen), and being a felon in possession of a firearm (count seventeen). Dkt. # 2.

## II.

Defendant argues that TPD officers had no jurisdiction to conduct a traffic stop, search his vehicle, or arrest him, because he is a member of the Muscogee (Creek) Nation and, under <u>McGirt</u>, the location where the traffic stop took place is now Indian country under federal law. Dkt. # 47, at 1; Dkt. # 48, at 2. He also argues that an Oklahoma state court judge had no authority to issue a search warrant for his cellular phone, because the state courts lack jurisdiction to issue a warrant for the property of an Indian person within Indian country. Dkt. # 44, at 1; Dkt. # 45, at 1, 6-7.

## A.

The Court will initially consider the jurisdictional issue raised by defendant before reaching his arguments concerning the alleged illegality of the traffic stop and subsequent conduct under the

---

[2] <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

Fourth Amendment. There is no dispute that defendant is a member of a federally recognized Indian tribe and that the location where the traffic stop occurred is now considered Indian country under federal law. Defendant argues that TPD had no authority to interrogate, search, or arrest him, and he claims that TPD officers should have sought assistance from tribal police before proceeding a traffic stop within the boundaries of the Muscogee (Creek) Reservation. Dkt. # 48, at 2. Defendant claims that tribal law, not state law, was applicable to determine whether a traffic violation giving rise to the traffic stop had occurred. Id. at 4. Finally, he asserts that a state court judge acted outside her jurisdiction by issuing a warrant to search the phone of an Indian person within Indian country. Dkt. # 45, at 6.

Defendant's arguments are not novel and this Court has previously considered whether McGirt affects the validity of police conduct before the decision was issued. In United States v. Bailey, 2021 WL 3161550 (N.D. Okla. July 26, 2021), the defendant argued that police officers violated his Fourth Amendment rights by executing a search warrant for his cellular phone, because he was an Indian and state law enforcement officers lacked jurisdiction to investigate criminal activity involving an Indian on tribal land. Id. at *1. The conduct at issue took place prior to the issuance of the McGirt decision. The defendant did not allege that law enforcement officers engaged in any other conduct that violated his Fourth Amendment rights, and he was strictly seeking to suppress evidence gathered during a search of his cellular phone on jurisdictional grounds. The Court explained that the exclusionary rule requires the suppression of evidence when this would be a deterrent to safeguard the Fourth Amendment rights of citizens, but the exclusionary rule does not apply when police officers acted in good faith with a reasonable belief that their conduct did not violate the Fourth Amendment. Id. at *2. The Court found that Oklahoma "'maintained

unquestioned jurisdiction for more than 100 years' over land now-recognized as 'Indian country' under both federal and tribal jurisdiction," and no reasonable law enforcement officer would have questioned whether he was acting within his jurisdiction by executing a search warrant for the property of a tribal member within Tulsa County. Id. at *3. Even if the police officers were later found to be acting outside of their jurisdiction due to McGirt, the police officers were acting with a good faith belief that they were acting within their jurisdiction at the time of the search. Id.

Defendant cites United States v. Baker, 894 F.2d 1144 (10th Cir. 1990), for the proposition that evidence must be suppressed when state police officers execute a search warrant involving an Indian on tribal lands. Dkt. # 45, at 6. However, Baker is clearly distinguishable from the facts of this case. The police officer in Baker submitted an affidavit in support of his request for a search warrant, and the affidavit plainly stated that the property to be searched was located within an Indian reservation and the renter of the building was also an Indian. Baker, 894 F.2d at 1148. The police officer knew that he was acting outside his jurisdiction by seeking and performing the search, and the good faith exception had no application. Defendant also cites United States v. Cooley, 919 F.3d 1135 (9th Cir. 2019), for the proposition that a law enforcement officer has an obligation to enquire about tribal citizenship of persons encountered during a traffic stop. In Cooley, the issue was whether a tribal police officer exceeded his jurisdiction by detaining a person during a traffic stop without attempting to initially determine whether the person was an Indian. Id. at 1142-43. The Ninth Circuit found that the tribal police officer exceeded his authority by detaining a non-Indian on a public highway running through an Indian reservation. Id. at 1143. Plaintiff argues that the Ninth Circuit's decision has been overruled by the Supreme Court, and Cooley does not support defendant's argument that DeGeorge was obligated to determine defendant's status as an Indian

6

before proceeding with the traffic stop. The Supreme Court found that tribal police officers have the authority to conduct limited detentions and searches of non-tribal members to investigate potential violations of state and federal law and possibly transport the non-tribal member to the appropriate law enforcement agency. United States v. Cooley, 141 S.Ct. 1638 (2021). Rather than support defendant's argument, the Supreme Court's decision supports a finding that DeGeorge would have had the authority to stop and detain Indians found on a public roadway within the city of Tulsa to assess potential violations of tribal or federal law.

The Court rejects defendant's argument that DeGeorge acted unlawfully by conducting a traffic stop and conducting a probable cause search of the vehicle. The conduct giving rise to defendant's arrest occurred before McGirt was decided, and TPD officers had no reason to suspect that defendant's Indian status or the location of the traffic stop within the historical boundaries of the Muscogee (Creek) Reservation had any bearing on their investigation. DeGeorge acted in good faith when he believed that he was acting within his jurisdiction by initiating a traffic stop, searching the vehicle, and requesting a warrant for a search of defendant's cellular phone. The Court also notes that if the same incident had occurred after McGirt there would be no basis to suppress the evidence seized as a result of the traffic stop. DeGeorge testified at the suppression hearing that all TPD officers have been cross-deputized by the Muscogee (Creek) Nation Lighthorse Police and TPD officers can conduct traffic stops of any vehicle within the city of Tulsa. The tribal status of a person may become relevant if a person is going to be arrested following the traffic stop, and tribal police would be contacted to perform the arrest of a tribal citizen. In other words, DeGeorge could have stopped the white Chevrolet Silverado, searched the vehicle, and detained the defendant following the search even if the incident took place after McGirt. It would make no sense to exclude evidence

when DeGeorge acted pursuant to a good faith belief that he was acting within his jurisdiction and TPD has since enacted policies to comply with the jurisdictional limitations created by McGirt, because excluding the evidence would not deter future police misconduct and it would merely punish a conscientious police officer who was following the law as it existed at the time. See Davis v. United States, 564 U.S. 229, 240-41 (2011) ("we have 'never applied' the exclusionary rule to suppress evidence obtained as a result of nonculpable, innocent police conduct).  Therefore, the alleged extrajudicial conduct of DeGeorge, other TPD officers, and the magistrate judge who issued a search warrant for defendant's cell phone is not a basis to suppress any evidence in this case.  The Court also will not consider defendant's arguments that DeGeorge should have applied tribal law to determine whether a traffic violation occurred or whether he had probable cause to believe that any occupant of the vehicle had committed an offense that would permit DeGeorge to conduct a vehicle search.

**B.**

Defendant argues that DeGeorge violated his Fourth Amendment rights by conducting a traffic stop without reasonable suspicion, searching the vehicle without probable cause, and for obtaining a warrant from a state court judge to search his cellular phone.  Plaintiff responds that DeGeorge had reasonable suspicion to believe that the white Chevrolet Silverado was involved in the reports of gunfire, and he also had probable cause to search the vehicle.  Plaintiff also argues that neither DeGeorge nor the magistrate who issued the search warrant for the search of defendant's cellular phone could have known that defendant's Indian status had any bearing on the jurisdiction of the state police or courts, and they acted with a good faith belief that the state of Oklahoma had jurisdiction over the case.

**Initiation of Traffic Stop**

The Court must initially consider whether DeGeorge had a valid basis to initiate a traffic stop and whether the length of the stop was reasonable. A traffic stop is treated as an investigative detention, and such a stop is governed by the standards set forth in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). In determining the reasonableness of a traffic stop, a court must make two separate inquiries. The first is whether the police officer had a valid reason for initiating the traffic stop. United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Id. Second, a traffic stop must not become an unnecessarily lengthy detention, but must be limited in scope to the purpose of the initial traffic stop. United States v. Rice, 483 F.3d 1079, 1083 (10th Cir. 2007). A police officer may extend the length of the traffic stop for questioning beyond the initial purpose of the traffic stop only if the officer has "an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning." United States v. Ramirez, 479 F.3d 1229, 1243 (10th Cir. 2007).

The Court must also consider whether the length of the traffic stop was reasonable under the second prong of Terry. An officer conducting a traffic stop may request a driver's license, vehicle registration, run a computer check, and issue a citation. See United States v. Zubia-Melendez, 263 F.3d 1155, 1161 (10th Cir. 2001). An officer may also "ask questions about the motorist's travel plans and authority to operate the vehicle," in addition to obtaining the relevant documentation, without exceeding the scope of an investigative detention. United States v. Alcaraz-Arellano, 441

F.3d 1252, 1258 (10th Cir. 2006). Such questioning does not violate the Fourth Amendment as long as the questioning does not prolong the traffic stop. United States v. Villa, 589 F.3d 1334, 1339 (10th Cir. 2009); United States v. Wallace, 429 F.3d 969, 974 (10th Cir. 2005). Police must have reasonable suspicion that criminal activity is afoot to continue a traffic stop beyond the purpose of issuing a warning or citation for the traffic violation. United States v. Kopp, 45 F.3d 1450, 1453 (10th Cir. 1995). Reasonable suspicion is a "particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (internal quotation marks omitted). An "inchoate and unparticularized suspicion or 'hunch' is insufficient" to support reasonable suspicion. United States v. Hall, 978 F.2d 616, 620 (10th Cir. 1992) (internal quotations and citations omitted). Reasonable suspicion "represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." Alcaraz-Arellano, 441 F.3d at 1260 (quoting United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997)). In determining whether an officer had reasonable suspicion of criminal activity, the Court does not evaluate the facts in isolation but instead construes them together based on the totality of the circumstances. United States v. Arivizu, 534 U.S. 266, 274 (2002).

DeGeorge had received multiple reports of gunfire and the shots were allegedly fired from a white pickup truck. Plaintiff's Ex. 4. The last call concerning gunfire was received at 12:27 a.m. on December 23, 2020, and the location of the gunfire was 6415 South Mingo Road. Plaintiff's Ex. 5. The final report of shots fired specifically identified the vehicle as a white Chevrolet Silverado. Id. at 3. About 30 minutes later, DeGeorge saw a white Chevrolet Silverado pull into the parking lot at 6415 South Mingo Road. He also observed that the vehicle's license plate was not properly lit as required by state law. The Court finds that DeGeorge had reasonable suspicion to initiate a

traffic stop. DeGeorge was in possession of information that a white Chevrolet Silverado was possibly involved in multiple reported instances of gunfire, and he observed the same type of vehicle pull into a parking lot after midnight. The parking lot was near the location where the last report of gunfire allegedly occurred, and reported gunfire had occurred only 30 minutes before DeGeorge initiated the traffic stop of the white Chevrolet Silverado. These facts provide an objective basis for DeGeorge to form a reasonable articulable suspicion that the vehicle could have been involved in the reported gunfire

DeGeorge also testified that he observed a potential traffic violation based on improper lighting of the vehicle's license plate, and this would constitute a traffic violation under Oklahoma law. Under OKLA. STAT. tit. 47, § 12-204.1, a vehicle must have no more than two lamps with a white light "placed as to illuminate the rear license plate and render it clearly legible from a distance of fifty (50) feet to the rear." DeGeorge testified that the vehicle's license plate was not visible from 50 feet away as required by state law, and this was an independent basis for the traffic stop. Defendant devoted much of his time at the suppression hearing in an effort to show that DeGeorge was mistaken that the vehicle's tag lights were not functioning properly. Even if DeGeorge were mistaken about whether the tag lights were malfunctioning, this would not necessarily establish that a constitutional violation occurred. An officer's belief that he observed a traffic violation, even if it is a mistaken belief, can still provide reasonable suspicion for a traffic stop. Heien v. North Carolina, 135 S. Ct. 530, 536 (2014); United States v. DeGasso, 369 F.3d 1139, 1144 (10th Cir. 2004). However, the officer's mistaken belief that he had a basis to initiate a search or seizure under the Fourth Amendment must be reasonable. Heien, 135 S. Ct. at 536. The Court has reviewed the videos from DeGeorge's vehicle and body camera, and finds that DeGeorge's belief that the

vehicle's tag lights were not functioning was reasonable, even if mistaken, and the traffic violation would independently provide reasonable suspicion for initiation of the traffic stop.

**Vehicle Search**

Defendant argues that DeGeorge lacked probable cause to conduct a vehicle search because it is not a violation of tribal or Oklahoma law for a passenger to have an open container of beer in a parked vehicle. Plaintiff responds that DeGeorge had probable cause to search the vehicle regardless of the presence of an open container of beer, because DeGeorge had an objective basis to believe that firearms were present in the vehicle and that firearms had been illegally discharged from the vehicle.

Police are permitted to conduct a warrantless search of a vehicle if they have probable cause to believe "that the vehicle contains evidence of criminal activity," and they may search "any area of the vehicle in which the evidence might be found." Arizona v. Gant, 556 U.S. 332, 347 (2009). Probable cause is established if "under the totality of the circumstances, there is a fair probability that the car contains contraband or evidence." United States v. Saulsberry, 878 F.3d 946, 951 (10th Cir. 2017). Defendant focuses much of his argument on the presence of an open container of beer, and he argues that it is not a violation of state or tribal law for a passenger to have an open container of beer in a parked vehicle. However, DeGeorge testified that the open container was simply one factor in his determination that he had probable cause to conduct a search of the vehicle. DeGeorge had received multiple reports of gunfire, and the final report came from the exact location where the traffic stop occurred. The vehicle stopped by DeGeorge matched the description provided in the shots fired calls. DeGeorge observed a holster in plain view near the center console of the vehicle, and two occupants of the vehicle admitted that they had prior firearms convictions. DeGeorge also

believed that the occupants of the vehicle seemed unusually nervous, and this belief was credible based on the Court's review of the body camera footage. In addition to this evidence, DeGeorge also observed defendant in possession of an open container of beer.

Considering the totality of the circumstances, the Court finds that DeGeorge had probable cause to search the vehicle for firearms, because there was a fair probability that evidence of firearms offenses would be found in the vehicle. Defendant focuses solely on whether the possession of an open container of beer by a passenger would constitute a crime under tribal or state law. Dkt. # 48, at 4. However, the Court must consider the totality of the circumstances to determine whether DeGeorge had probable cause to search the vehicle and, even if the Court assumed that defendant's possession of an open container of beer did not violate the law, there was more than sufficient evidence to establish probable cause to search the vehicle for firearms.

**Search of Defendant's Person**

Defendant argues that the search of his person at the scene of the traffic stop violated his Fourth Amendment rights. Defendant's motion focuses solely on DeGeorge's alleged lack of jurisdiction to conduct a search incident to arrest of defendant, but his arguments at the suppression hearing can reasonably be construed as a challenge to the legality of the search under the Fourth Amendment. The Court has already disposed of defendant's jurisdictional argument, but the Court will consider whether the search of defendant's person complied with the Fourth Amendment.

The body camera footage shows that DeGeorge asked defendant to step out of the vehicle, and DeGeorge expressly advised defendant that he was not under arrest. Defendant asked DeGeorge why he was being detained, and DeGeorge succinctly and accurately explained the facts giving rise to probable cause for a search of the vehicle. DeGeorge stated that he was going to conduct a pat-

13

down of defendant, and he asked defendant if there was anything on defendant's person that DeGeorge "should be aware of." Defendant advised DeGeorge that he had a pocketknife in his front left pocket and DeGeorge felt something in defendant's front left pocket. DeGeorge did not find a pocketknife, but he did find a small quantity of cash and illegal drugs. During an investigative detention, a police officer is authorized to take reasonable steps to ensure officer safety. United States v. Garcia, 459 F.3d 1059, 1063 (10th Cir. 2006). In some cases, police are authorized to conduct a pat-down of a person "to allow the officer to pursue his investigation without fear of violence." Id. Under Terry, an officer possesses:

> a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

Terry, 392 U.S. at 27. Under the totality of the circumstances, a reasonable police officer can take into account whether the investigative detention is taking place a dangerous neighborhood or location. United States v. Atlas, 94 F.3d 447, 450-51 (8th Cir. 1996).

The Court does not find that DeGeorge violated defendant's Fourth Amendment rights by conducting a pat-down before the vehicle search occurred. The circumstances gave rise to a legitimate concern for officer safety due to the number of occupants of the vehicle, the likely presence of firearms in the vehicle, and the time and location of the traffic stop. The Court has reviewed the body camera video and DeGeorge conducted a limited pat-down of defendant for weapons. Defendant told DeGeorge that he had a pocketknife in his front left pocket and DeGeorge felt an object in that pocket. Although the items turned out to be cash and drugs, DeGeorge acted

14

reasonably by removing the items from defendant's pocket in light of defendant's statement that he was in possession of a pocketknife. The Court can discern no other Fourth Amendment issues raised in defendant's motion to suppress (Dkt. # 47), and his motion is denied in its entirety.

**Search of Cell Phone**

Defendant asks the Court to exclude evidence gathered during a search of his cellular phone, because the search warrant was issued by a state court judge with no authority to issue a search warrant for the property of an Indian citizen in Indian country. Defendant also argues that state law enforcement officers failed to return the warrant in a timely manner as required by OKLA. STAT. tit. 22, § 1232, and he claims that the warrant was not filed in state court criminal proceedings against defendant pursuant to OKLA. STAT. tit. 22, § 1224.2. The Court has already rejected defendant's jurisdictional argument, and the fact that the search was warrant was issued by a state court judge is not a basis to suppress evidence seized as a result of the search warrant for defendant's cellular phone.

Defendant argues that evidence seized pursuant to the search warrant for his cellular phone should be suppressed, because law enforcement officials violated state law by failing to file a timely return listing the evidence seized. Dkt. # 45, at 8. Under § 1224.2, a search warrant and a return listing any property seized during execution of the warrant must be filed in the state district court, and the records relating to the search warrant are to be transferred to any subsequent criminal case filed after execution of the warrant. The law enforcement officer must "forthwith" provide a written inventory of the property seized pursuant to the warrant. OKLA. STAT. tit. 22, § 1233. Defendant's argument for the suppression of evidence fails for two reasons. Under Oklahoma law, suppression is not the remedy for the "departure from the form or mode prescribed in this chapter" unless the

defendant can show that "it has actually prejudiced the defendant or tended to his prejudice." OKLA. STAT. tit. 22, § 1273. Defendant has made no attempt to make a showing of actual or potential prejudice, and he is merely alleging a technical violation of the warrant return procedure. Second, the Court applies federal law to determine if evidence should be suppressed, and violations of state warrant procedures do not require the suppression of evidence unless the conduct would also violate the Fourth Amendment. United States v. Villagrana-Flores, 467 F.3d 1269, 1278 (10th Cir. 2006); United States v. Mikulski, 317 F.3d 1228, 1232 (10th Cir. 2003). Defendant has not attempted to show that alleged violations of state law would also constitute violations of the Fourth Amendment. Even if the Court assumed that state law enforcement officers committed a violation of state law, this would not require the suppression of evidence gathered during a search of defendant's cellular phone, and defendant's motion to suppress (Dkt. # 44) is denied.

**IT IS THEREFORE ORDERED** that Motion to Suppress Evidence Obtained from Search of Defendant Sherwood's Cellular Phone (Dkt. # 44) and the Motion to Suppress Evidence Obtained in Warrantless Arrest, Search and Seizure (Dkt. # 47) are **denied**.

**DATED** this 1st day of November 2021.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE